1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11    JUAN CARLOS GARCIA, | 20-CV-2127-LAB-WVG |
| 12                     Petitioner, | REPORT AND RECOMMENDATION |
| 13    v. | DENYING PETITION FOR WRIT OF |
| 14 | HABEAS CORPUS |
| 15    J. ROBERTSON, Warden, et al., | |
| 16                   Respondents. | |

17

18    **I.    INTRODUCTION**

19        On October 29, 2020, Juan Carlos Garcia ("Petitioner"), a state prisoner proceeding

20    *pro se,* filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. section

21    2254, challenging his conviction in San Diego Superior Court for carjacking, assault with

22    a deadly weapon, unlawful taking and driving of a vehicle, and withholding a stolen

23    vehicle.[1] (Doc. No. 10-8 at 74-78). Petitioner claims the trial court committed prejudicial

24    error and violated his due process rights and right to a fair trial by allowing an officer to

25    testify as to whether the Petitioner appeared in a surveillance video at the crime scene.

26    _____

27    [1] Petitioner was also convicted based on findings that, during the commission of the carjacking and the assault with a deadly
      weapon, Petitioner personally inflicted great bodily injury and personally used a dangerous and deadly weapon. (Doc. No.
      10-8 at 74-75). Additionally, Petitioner had served a prior prison term and he had a prior conviction that qualified as a serious

28    felony and a strike. (Doc. No. 10-9 at 3).

Petitioner argues the officer's testimony on the surveillance video ultimately led the officer to improperly opine on Petitioner's guilt, which unfairly prejudiced the jury against Petitioner. (Doc. No. 1 at 6).

On March 3, 2021, James Robertson, Warden of Pelican Bay State Prison, who is represented by Sharon L. Rhodes and Xavier Becerra ("Respondents"), filed an Answer to the Petition ("Answer"). (Doc. No. 9.) On May 14, 2021, Petitioner filed a Traverse. (Doc. No. 13.) This case is before the undersigned Magistrate Judge who has reviewed the Parties' submissions as well as the entirety of the underlying record. For the reasons discussed below, the Court RECOMMENDS the Petition be DENIED without prejudice.

## II.   FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to a statutory presumption of correctness).

### a.   Petitioner's Underlying Conduct

On the afternoon of June 7, 2013, E.F. was sitting in his car outside of the Logan Heights Library when he noticed a woman, a man, and a child exit the library together. (Doc. No. 10-15 at 3). E.F. noticed the couple appeared to be arguing, and moments later, the woman and child left in a car without the man. *Id.* Shortly after, the man appeared at the driver's side window of E.F.'s car and said to E.F., "'Puto, who are you calling?'" E.F. replied, "'Nobody, I'm waiting for my daughter.'" *Id.* at 4. The man walked away and returned to E.F.'s car a couple of times before he ultimately returned and opened E.F.'s car door. *Id.* E.F. saw the man holding a knife. *Id.* E.F. moved toward the passenger side of the car, but before he could get outside of the car, E.F. felt the man grab his left foot. *Id.* E.F. managed to get out of the car, and the man closed the passenger door and drove off in E.F.'s car, taking E.F.'s phone, wallet, and tools with him. *Id.* At that point, E.F. realized he had been stabbed in the leg. *Id.* E.F. was transported to the hospital where he received stitches

for the stab wound. *Id.* at 5.

### b. Officer Smith's Investigation of Petitioner's Underlying Conduct

The following facts are taken directly from the California Court of Appeal's opinion:

> San Diego Police Detective John Smith began investigating the carjacking and stabbing that occurred at the Logan Heights Library. Detective Smith obtained surveillance video from the library taken on the day of the incident. The video did not show the carjacking because the view from the camera panned around the library grounds, "back and forth," but "wasn't panning on where the incident occurred" at the time of the incident. Smith was aware from the witness descriptions that he was looking at the video to find a Hispanic male in his twenties with a shaved head or close cut hair who was accompanied by a woman and a small child. Smith personally watched all of the video that had been provided to him by [the] library staff, and he found images that matched the subject, as well as the woman and child. Smith created several still photo[graph]s from the video. Smith then went to the hospital and showed E.F. one of the still photographs derived from the video. E.F. said that the photograph showed the man who had stabbed him and had taken E.F.'s car.

> Detective Smith tracked down the registered owner of the car that E.F. had seen the woman and child get into just before the incident. The owner of that car was D.N. Detective Smith and another officer made contact with D.N. and showed her several still images that he had obtained from the library surveillance video. D.N. told the officers that she recognized the car shown in the photographs as her own and that her daughter [] sometimes used the car. D.N. also said that she believed the woman in the photographs was her daughter. D.N. also told the officers that she believed the man in the photographs was Garcia, who had been dating D.N.'s daughter at that time.

> Detective Smith investigated Garcia, including by looking at Garcia's photographs and postings on Facebook. Smith found several photographs, including a group photograph that had been posted to Garcia's Facebook page sometime after June 7, 2013, that included a reference to Garcia being in Chicago with [his] family; this photograph was admitted as an exhibit at trial. Based on information provided by Garcia's sister, K.T., Smith believed that Garcia was the third person

from the left in the photograph. Some of his tattoos were visible in the photograph.

Another photo posted to Garcia's Facebook around the same time frame was admitted at trial; Smith found this photograph to be significant because he believed that it showed Garcia wearing the same black tank top as the tank top worn by the suspect in the [surveillance] video. Smith acknowledged that the person he believed to be Garcia in the two photographs was not bald, although the suspect from the surveillance video was bald; there was only a single Facebook photo, which was posted a year before the incident, in which the person he believed to be Garcia displayed a shaved head. Smith believed that Garcia's tattoos were consistent with those that could been [sic] seen on the suspect in the surveillance video. Garcia also had a scar on his left arm, and this scar was visible on the arm of the man seen in the surveillance video from the library.

Upon learning Garcia's identity in 2013, Detective Smith issued a warrant for Garcia's arrest. Garcia was not arrested until 2017.

(Doc. No. 10-15 at 3-7).

### c. Petitioner's Jury Trial

Detective Smith's investigation led to charges being brought against Petitioner, and Petitioner's case was tried before a jury. Petitioner's defense at trial was that he was not the person who had been involved in the incident and that the man in the library surveillance video was someone else. (Doc. No. 10-15 at 7). During trial, the State called Detective Smith as a witness. (Doc No. 10-6 at 131). Detective Smith testified at length about his investigation into Petitioner, which included his review of the surveillance footage taken from the library on the day of the carjacking. (Doc. No. 10-6 at 131-45;Doc. No. 10-7 at 24-87). The prosecutor asked Detective Smith if, based on his investigation and review of the video surveillance, had he formed an opinion regarding the identity of the suspect. (Doc. No. 10-7 at 66:7-11). Detective Smith answered affirmatively and proceeded to identify Garcia as the person he believed was the suspect in the surveillance video. *Id.* at 66:14-19. The prosecutor re-called Detective Smith to the stand in rebuttal to

ask whether any of the photographs introduced by the defense had changed Detective Smith's opinion as to who the person in the surveillance video was. *Id.* at 174:17-22. Detective Smith replied "No, it does not," and when asked why not, he elaborated, "Because I'm still 100 percent sure, in my mind, that that is [Garcia]." *Id.* at 174:23-26.

On October 31, 2017, a jury convicted Petitioner of one count of carjacking (Pen. Code § 215(a)); one count of assault with a deadly weapon (§ 245(a)(1)); one count of unlawful taking and driving of a vehicle (Veh. Code § 10851(a)); and one count of withholding a stolen vehicle (§ 496(d)). (Doc. No. 10-8 at 74-78). The jury also found that, during the commission of the carjacking, Petitioner personally inflicted great bodily injury on the victim within the meaning of Penal Code sections 12022.7(a) and 1192.7(c)(8), and that Petitioner personally used a dangerous and deadly weapon within the meaning of Penal Code sections 1192.7 (c)(23), and 12022(b)(2). *Id.* Further, the jury found that, related to the assault with a deadly weapon charge, Petitioner personally used a dangerous and deadly weapon within the meaning of Penal Code section 1192.7(c)(23), and that he personally inflicted great bodily injury on the victim within the meaning of Penal Code Sections 1192.7(c)(8) and 12022.7(a). *Id.* Petitioner also admitted he had a prior serious felony conviction within the meaning of Penal Code section 667(a)(1), a prison sentence prior within the meaning of §667.5(b), and a prior strike conviction pursuant to Penal Code sections 667(b)-(1), 668, and 1170.12. *Id.* As a result of Petitioner's convictions, the court sentenced Petitioner to 20 years in state prison. (Doc. No. 10-10 at 6). Petitioner then pursued the appeals process, which is detailed further below.

## III.   PROCEDURAL HISTORY

On August 13, 2018, Petitioner filed a timely appeal of his conviction in the California Court of Appeal, Fourth Appellate District, Division One. (Doc. No. 10-15). Petitioner argued the trial court committed prejudicial error and violated Petitioner's rights to due process and a fair trial by allowing Detective Smith to testify to his opinion of Petitioner's guilt. (Doc. No. 10-11). On October 11, 2018, Petitioner submitted a supplemental brief arguing the enactment of Senate Bill 1393 required the case to be

remanded to enable the trial court to exercise its discretion to remove the five-year prior serious felony enhancement to Petitioner's sentence. (Doc. No. 10-12). On June 26, 2019, the appellate court affirmed Petitioner's conviction on the merits. The court explained Petitioner failed to object at trial to Detective Smith's testimony on the identity of the suspect in the video surveillance. (Doc. No. 10-15). However, the appellate court vacated Petitioner's sentence and remanded it for resentencing because the trial court was entitled to strike the prior serious felony enhancement to Petitioner's sentence under Senate Bill 1393. *Id.*

On August 5, 2019, Petitioner exhausted his state court remedies by presenting the ground for relief to the California Supreme Court in a petition for review. (Doc. No. 10-16). The California Supreme Court denied the petition for review on September 11, 2019. *Id.* On October 29, 2020, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. section 2254 in this Court. (Doc. No. 1). Having been fully briefed by Petitioner and Respondents, the petition is ripe for this Court's recommendation.

## IV.    STANDARD OF REVIEW

This petition is governed by 28 U.S.C. section 2254, the Antiterrorism and Effective Death Penalty Act ("the AEDPA"). The AEDPA provides that a federal court will review a state prisoner's application for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, the AEDPA restricts federal courts' ability to afford federal habeas corpus relief unless a petitioner demonstrates the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. (28 U.S.C. § 2245(d)(1)-(2)).

The AEDPA sets forth a standard that is highly deferential to state courts. Section 2254 was intended to "reflect[] the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 332 (1979)).  Further, the AEDPA "preserves authority to issue the writ [of habeas corpus] where there is no possibility fairminded [sic] jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further." *Harrington*, 562 U.S. at 102.

## V.   DISCUSSION

Petitioner bases his habeas corpus claim on the grounds that the Superior Court committed prejudicial error and violated his constitutional rights to due process and a fair trial by allowing an officer to testify as to whether Petitioner appeared in a surveillance video at the crime scene, which resulted in the officer testifying as to his opinion of Petitioner's guilt. (Doc. No. 1 at 6). Respondents argue Petitioner's request for relief is procedurally barred because the California Court of Appeal denied relief on the procedural ground of forfeiture due to Petitioner's failure to object during trial on the specific grounds raised on appeal. (Doc. No. 9 at 1).  Respondents further argue Petitioner cannot be granted federal habeas review because any error during trial did not have a substantial and injurious effect or influence on the jury's verdict, and his federal rights to due process and a fair trial were thus not violated. *Id.*

## A. **Petitioner's Claim is Procedurally Barred**

The California Court of Appeal affirmed Petitioner's conviction on the procedural grounds that Petitioner forfeited his claims by failing to make a specific and timely objection to Detective Smith's testimony at trial pursuant to California Evidence Code section 353's contemporaneous objection rule. The Court of Appeal specified:

> Smith testified about the time he spent and the efforts he took to examine the surveillance video and the still photographs he obtained from the video, as well as the time he took to review the photographs

Case 3:20-cv-02127-LAB-WVG   Document 15   Filed 08/03/21   PageID.993   Page 8 of 12

available on Garcia's Facebook page. The prosecutor then asked Smith, "Now, after viewing multiple photographs of the defendant that you have seen … did you form an opinion as to who you believe the person on court's exhibit 47 [a still photograph taken from the surveillance video] was?" Defense counsel interjected, stating, "Objection, relevance." The court overruled the relevance objection, and Detective Smith answered, "Yes." The prosecutor then asked Smith, "Who is that person?" Defense counsel did not object, and Smith responded by identifying Garcia as the person seen in the photograph from the surveillance video. Smith then went on to testify that he had also personally met Garcia, and that this meeting "confirm[ed] [his] opinion that the person in court's [exhibit] 47 was" Garcia. Defense counsel registered no further objections to this line of questioning.

The prosecutor proceeded to show Detective Smith another court exhibit and asked Smith whether he recognized it. Smith replied that the exhibit was "a photograph taken in 2017 of [Garcia], the defendant sitting at the table here." … The prosecutor asked, "So, the person who you witnessed the photograph being taken of, who was that person?" Smith replied that it was Garcia. When the prosecutor asked him to point out Garcia, Smith said, "The individual sitting at the defense table with the blue suit and gray tie."  The prosecutor asked, "The same person that we've been identifying?" and Smith replied, "Correct." The prosecutor then asked, "And you're confident it was the same person?" Smith replied, "Yes." No objections were made.

The prosecutor recalled Detective Smith to testify in rebuttal. The prosecutor said to Smith, "Now, Detective, understanding that the defense has offered some court's exhibits in regards to tattoos on [one of Garcia's brothers]; correct?" Smith indicated he understood that the defense had offered these photographs…. When asked whether those photographs "change[d] [his] opinion, at all, as to who the person is in the surveillance video, court's exhibit 7, and in all of the still photos that are from court's exhibit 7," Smith said, "No, it does not." When asked why not, Smith said, "Because I'm still 100 percent sure, in my mind, that that is [Garcia]." Smith proceeded to explain that the tattoos visible in exhibits 59 and 60, which showed Garcia's brother, "do not match the tattoos that I have seen on the body of the individual inside the library from the video from court's exhibit 7." Defense counsel did not object at any point during this line of questioning.

20-CV-2127-LAB-WVG

(Doc. No. 15 at 8-10).

In analyzing the foregoing record, the California Court of Appeal relied on California's contemporaneous objection rule:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion." Cal. Evid. Code § 353(a).

Based on this state procedural rule, the California Court of Appeal found the Petitioner's single relevance objection was insufficient to preserve the Petitioner's claim raised on appeal and now raised before this Court for federal habeas review. (Doc. No. 15 at 12). Respondents contend the appellate court's finding on procedural grounds forecloses this Court's consideration of the merits of the Petitioner's claim. (Doc. No. 9 at 1).

The Supreme Court of the United States has ruled federal courts are precluded from reviewing a state court's decision on a question of federal law if the decision rests on an "independent and adequate" state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The Ninth Circuit has further held the respondent has the burden to prove the "existence of an independent and adequate state procedural ground" because procedural default is an affirmative defense. *Bennett v. Mueller*, 322 F. 3d 573, 586 (9th Cir. 2003). If the state adequately pleads an independent and adequate state procedural ground, the burden then shifts to the petitioner to place the defense in issue by "asserting specific factual allegations that demonstrate the inadequacy of the state procedure." *Id.* If the state meets its burden under *Bennett*, federal review of the habeas corpus claim is foreclosed unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

A state procedural rule is deemed "independent" if the state law basis for the decision is not interwoven with federal law. *Michigan v. Long*, 463 U.S. 1032, 1041 (1983). *See*

20-CV-2127-LAB-WVG

*also Harris v. Reed*, 489 U.S. 255, 265 (1989). The basis for a decision is "interwoven" with federal law if the state has made application of the procedural bar dependent on an antecedent ruling on federal law, such as the determination of whether federal constitutional error has been committed. *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). For a state procedural rule to be considered "adequate," it must be "firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (citing *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009)).

Respondents have met their initial burden under *Bennett*. The Ninth Circuit previously concluded in *Fairbank* the contemporaneous objection rule constitutes an independent and adequate state procedural ground.[2] (Doc. No. 9 at 13) (citing *Fairbank v. Ayers*, 650 F.3d 1243, 1256-57 (9th Cir. 2011)). Therefore, as Respondents argue in their briefing, it is firmly established that the contemporaneous objection rule is both an independent and an adequate state procedural rule to satisfy *Coleman.* The burden thus shifts to Petitioner to "demonstrate the inadequacy of the state procedure." *Bennett*, 322 F.3d at 586. Although Petitioner contends his claims are not procedurally barred as the state argues, he did not specifically discuss the inadequacy of the contemporaneous objection rule and instead focused on the due process grounds of his claim. (Doc No. 13 at 2). Therefore, Petitioner has failed to meet his burden under *Bennett*, and the California Court of Appeal's decision rests on an independent and adequate state procedural rule. *Bennett*, 322 F. 3d at 586.

Petitioner has also not established "cause" and "prejudice" or a "fundamental miscarriage of justice" to overcome the claim being precluded from federal review. *Coleman*, 501 U.S. at 750. Although neither "cause" nor "prejudice" have been explicitly defined, Supreme Court decisions subsequent to *Coleman* have shed light on what a

---

[2] "Because a federal court sitting in habeas must presume that [the state court's] finding of fact is correct, *see* 28 U.S.C. § 2254(b)(3), and because there is no clear and convincing evidence to the contrary, we conclude that the California Supreme Court applied an independent and adequate state procedural rule that bars federal review of Fairbank's prosecutorial [sic] misconduct claim." *Fairbanks*, 650 F.3d at 1256-57.

petitioner must show to demonstrate each. The Court in *Murray* found "cause" may be demonstrated by "a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Further, "prejudice" has been found to require a showing that the alleged errors at trial must have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 171 (1982). No showings of cause or prejudice have been demonstrated here, either through Petitioner's briefing or through the underlying state court record, which this Court has reviewed in its entirety.

Regarding "cause," Petitioner argues it would have been futile for him to continue objecting to Officer Smith's testimony at trial after one relevance objection was overruled by the court. (Doc. No. 13 at 3). However, the Supreme Court has explicitly ruled "[t]he futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial." *Engle v. Issac*, 465 U.S. 107, 130 (1982). Additionally, Petitioner failed to allege any other facts suggesting cause such as ineffective assistance of counsel for failing to properly object to the admission of Detective Smith's testimony. Therefore, Petitioner's claims are insufficient to demonstrate "cause for the default," and, because *Coleman* requires petitioners to show both cause *and* prejudice, an analysis of "prejudice" is unnecessary. *Coleman*, 501 U.S. at 750.

As stated above, as an alternative to demonstrating cause and prejudice, a petitioner can avoid preclusion of federal review by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The Supreme Court has limited the "miscarriage of justice" exception to petitioners who can show that "a constitutional violation has probably resulted in one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "Actual innocence" requires a showing that "it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." *Id.* at 327. Therefore, "a claim of actual innocence must be

based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). No such claims have been sufficiently made by Petitioner in any of his briefing.

While Petitioner maintains he is innocent of the charges he was convicted of and contests the admission of Officer Smith's testimony on federal due process and fair trial grounds, he has not presented any new evidence to show "it is more likely than not that no reasonable juror would have convicted [Petitioner] in light of the new evidence." *Schlup*, 513 U.S. at 326-27. Due to this lack of new evidence, Petitioner has demonstrated neither "cause for the default and actual prejudice as a result of the alleged violation of federal law" nor this Court's "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Because the State has met its burden that the Court of Appeal's decision is based on "an independent and adequate state procedural rule" and Petitioner did not sufficiently demonstrate an exception to the rule in *Coleman*, Petitioner's habeas corpus claim is procedurally barred. Accordingly, this Court is precluded from reviewing the merits of Petitioner's claim. *Id.* at 729.

## VI.   CONCLUSION

For the aforementioned reasons, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus be DENIED without prejudice. The Court submits this Report and Recommendation to United States District Judge Larry A. Burns pursuant to 28 U.S.C. section 636(b)(1).

**IT IS ORDERED.**

DATED:  August 3, 2021

_____
Hon. William V. Gallo
United States Magistrate Judge

20-CV-2127-LAB-WVG